UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WARREN OLIVER,

        Plaintiff,

vs.

                         Case No. 3:14-cv-1506-J-39JRK
OFFICER WHITEHEAD, et al.,

        Defendants.

---

**ORDER**

**I.  Status**

Plaintiff is an inmate confined in the Florida penal system. He is proceeding pro se on an Amended Civil Rights Complaint (Amended Complaint) (Doc. 11) pursuant to 42 U.S.C. § 1983.  He is currently confined at Tomoka Correctional Institution (TCI).  He filed his original Complaint (Doc. 1) on December 8, 2014, pursuant to the mailbox rule.

There are several motions to dismiss pending: (1) Defendant Hale's Motion to Dismiss (Hale's Motion) (Doc. 24)[1]; Defendant Oliveros' Motion to Dismiss (Oliveros' Motion) (Doc. 55); Whitehead's Motion to Dismiss (Whitehead's Motion) (Doc. 56); and Espino and Musselman's Motion to Dismiss (Espino and Musselman's

---

[1] The Court deferred ruling on Hale's Motion.  Order (Doc. 58).

Motion) (Doc. 59).[2]  <u>See</u> Order (Doc. 12).  Plaintiff responded to all of the motions.  <u>See</u> Plaintiff's Opposition to Hale's Motion to Dismiss (Response to Hale) (Doc. 29); Plaintiff's Opposition to Whitehead and Oliveros' Motion to Dismiss (Response to Whitehead and Oliveros) (Doc. 60); and Plaintiff's Opposition to Espino and Musselman's Motion to Dismiss (Response to Espino and Musselman) (Doc. 61).

## II.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. (citing <u>Twombly</u>, 550 U.S. at 555).

---

[2] In this opinion, the Court references the document and page numbers designated by the electronic filing system.

2

### III.  Exhaustion of Administrative Remedies

Defendants Hale, Whitehead, Espino and Musselman contend that Plaintiff failed to exhaust his administrative remedies prior to filing suit regarding his claim of inadequate heating at Florida State Prison (FSP), and they seek the dismissal of that claim pursuant to 42 U.S.C. § 1997e(a).  Hale's Motion at 4-6; Whitehead's Motion at 4-6; Espino and Musselman's Motion at 4-5. More specifically, the Defendants assert that Plaintiff failed to properly exhaust the inadequate heating issue alleged in this lawsuit.  See Defendant Hale's Exhibit A, Declaration of Catherine Heller (Doc. 24-1) and Defendant Hale's Exhibit B, Declaration of Shirley A. Johnson (24-2); Defendant Whitehead's Exhibit A, Declaration of Catherine Heller (Doc. 56-1) and Defendant Whitehead's Exhibit B, Declaration of Shirley A. Johnson (Doc. 56-2).  Upon review, the motions to dismiss for failure to exhaust administrative remedies, a matter in abatement, are due to be denied.  An explanation follows.

The exhaustion of available administrative remedies is required before a 42 U.S.C. § 1983 action with respect to prison conditions by a prisoner may be initiated in this Court.  There are guidelines for reviewing a prisoner civil rights action:

> Before a prisoner may bring a prison-conditions suit under § 1983, the Prison Litigation Reform Act of 1995 requires that he exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736, 121 S.Ct. 1819,

> 1822, 149 L.Ed.2d 958 (2001). The purpose of
> the PLRA's exhaustion requirement is to
> "afford corrections officials time and
> opportunity to address complaints internally
> before allowing the initiation of a federal
> case." Woodford v. Ngo, 548 U.S. 81, 93, 126
> S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)
> (quotation omitted). To properly exhaust, a
> prisoner must "[c]ompl[y] with prison
> grievance procedures." Jones v. Bock, 549 U.S.
> 199, 218, 127 S.Ct. 910, 922–23, 166 L.Ed.2d
> 798 (2007).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1208 (11th

Cir. 2015).

In undertaking a review concerning the exhaustion of

administrative remedies, the Court must employ a two-step process:

> After a prisoner has exhausted the
> grievance procedures, he may file suit under §
> 1983. In response to a prisoner suit,
> defendants may bring a motion to dismiss and
> raise as a defense the prisoner's failure to
> exhaust these administrative remedies. See
> Turner,[3] 541 F.3d at 1081. In Turner v.
> Burnside we established a two-step process for
> resolving motions to dismiss prisoner lawsuits
> for failure to exhaust. 541 F.3d at 1082.
> First, district courts look to the factual
> allegations in the motion to dismiss and those
> in the prisoner's response and accept the
> prisoner's view of the facts as true. The
> court should dismiss if the facts as stated by
> the prisoner show a failure to exhaust. Id.
> Second, if dismissal is not warranted on the
> prisoner's view of the facts, the court makes
> specific findings to resolve disputes of fact,
> and should dismiss if, based on those
> findings, defendants have shown a failure to
> exhaust. Id. at 1082-83; see also id. at 1082
> (explaining that defendants bear the burden of
> showing a failure to exhaust).

---

[3] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

Whatley, 802 F.3d at 1209.

A number of factors guide the Court.  Initially, the Court recognizes that exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the Prison Litigation Reform Act.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.), cert. denied, 555 U.S. 1074 (2008); Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).  The Supreme Court has stated that "failure to exhaust is an affirmative defense under the PLRA[.]"  Jones v. Bock, 549 U.S. at 216.  However, "the PLRA exhaustion requirement is not jurisdictional[.]"  Woodford v. Ngo, 548 U.S. at 101.  See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter").

Further, a prisoner must completely exhaust his remedies prior to initiating a suit in federal court.  If he fails to complete the process, the civil rights complaint must be dismissed.  This is true even if he thereafter exhausts his administrative remedies after initiating his action in federal court.  See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (per curiam); Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003); McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam); Medina-Claudio v. Rodiquez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Jackson

5

v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman
v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin
Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

Additionally, not only is there a recognized exhaustion
requirement, "the PLRA exhaustion requirement requires proper
exhaustion." Woodford, 548 U.S at 93.

> Because exhaustion requirements are designed
> to deal with parties who do not want to
> exhaust, administrative law creates an
> incentive for these parties to do what they
> would otherwise prefer not to do, namely, to
> give the agency a fair and full opportunity to
> adjudicate their claims. Administrative law
> does this by requiring proper exhaustion of
> administrative remedies, which "means using
> all steps that the agency holds out, and doing
> so properly (so that the agency addresses the
> issues on the merits)." Pozo,[4] 286 F.3d, at
> 1024. . . .

Id. at 90. In fact, "[p]roper exhaustion demands compliance with
an agency's deadlines and other critical procedural rules." Id.

Of import, the Court recognizes that Plaintiff is not required
to plead exhaustion. Thus, the Amended Complaint was not dismissed
on its face. Plaintiff avers that he exhausted his administrative
remedies and references the grievances attached to his Response to
Hale (Doc. 29-1). Plaintiff also references the Affidavit of
Adrian Chisholm (Doc. 29-1), a fellow inmate, who states that, for

---

[4] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.), cert. denied,
537 U.S. 949 (2002).

years, officers have removed grievances from the grievance box at FSP.

There are disputed issues of fact as to whether Plaintiff exhausted all available administrative remedies.  Thus, the Court must now make findings on the disputed issues of fact to decide whether he properly exhausted his administrative remedies.[5]

The FDOC provides an internal grievance procedure.  See Chapter 33-103, Florida Administrative Code (F.A.C.).  Thus, to determine whether Plaintiff exhausted his administrative remedies, this Court must examine relevant documents to determine whether the incidents in question were grieved.  If these incidents were grieved and the documents complied with the deadlines and other procedural rules as set forth in the F.A.C., the issues raised therein are exhausted.

Generally, the FDOC provides a three-step grievance procedure.  The Eleventh Circuit succinctly described the administrative grievance procedure available to the inmates confined in the Florida penal system, including the procedure for medical grievances:

---

[5] Since the parties have not requested an evidentiary hearing on this issue and they have submitted evidence for the Court's consideration, the Court proceeds to resolve the material questions of fact based on the documents before the Court.  Bryant, 530 F.3d 1377 n.16 (recognizing that a district court may resolve material questions of fact on the submitted papers when addressing the Prison Litigation Reform Act's exhaustion of remedies requirement).

> In Florida, the grievance process
> consists of a three-step procedure. An inmate
> must first file an "informal grievance ... to
> the staff member who is responsible in the
> particular area of the problem." Fla. Admin.
> Code Ann. § 33-103.005(1). The second step
> requires the inmate file a formal grievance
> with the warden. Id. § 33-103.006(1)(a). If
> the inmate is unsuccessful at this point, he
> may submit an appeal to the Secretary of the
> DOC. Id. § 33-103.007.
>
> Medical grievances require only a
> two-step procedure: the inmate must file a
> formal grievance at the institutional level
> with the chief health officer. If the inmate
> is unsuccessful, he may file an appeal with
> the Secretary. Id. § 33-103.008.

Kozuh v. Nichols, 185 F. App'x 874, 877 (11th Cir. 2006) (per

curiam), cert. denied, 549 U.S. 1222 (2007).

The Defendants contend that Plaintiff filed two grievance

appeals regarding the topic of prison conditions between August 1,

2012, and April 1, 2013. Hale's Motion at 6; Whitehead's Motion at

6. They state that these grievance appeals did not constitute

exhaustion because they were returned without action. Id. See

Defendant Hale's Exhibit B (Ex. 1 & 2); Defendant Whitehead's

Exhibit B (Ex. 1 & 2).[6] To challenge the Defendants' position,

Plaintiff, in his Response to Hale, provides additional grievances

that he submitted to the Secretary of the Florida Department of

Corrections (FDOC) pertaining to his conditions of confinement, and

more particularly, address his complaint about inadequate heat on

---

[6] The Court hereinafter refers to these numbered exhibits as
"Ex."

8

the first floor at FSP.  The record shows that on February 14, 2013, Plaintiff submitted two Requests for Administrative Remedy or Appeal (Doc. 29-1 at 10, 12), labeled emergency grievances, to the Secretary.

In light of these emergency grievances complaining about inadequate heat, the Court is not convinced that the Defendants have submitted sufficient supporting documents demonstrating complete lack of exhaustion.  Plaintiff states that he submitted grievances, and he has provided the Court with copies of emergency grievances demonstrating his efforts to exhaust his administrative remedies.  Based on all reasonable inferences, Plaintiff has shown that he properly filed grievances concerning the claim of inadequate heat at FSP.  Without more, and based on the record before the Court, the Court is unable to conclude that Plaintiff failed to exhaust his administrative remedies in compliance with the procedural rules.  Therefore, at this juncture, the Court concludes that Hale's Motion, Whitehead's Motion, and Espino and Musselman's Motion should be denied with regard to the assertion that Plaintiff failed to exhaust his administrative remedies with respect to the inadequate heat claim.  It appears that Plaintiff attempted to avail himself of the administrative grievances process and he sufficiently and adequately raised the claim of inadequate heat at FSP through the administrative grievance process.

## IV.  Eighth Amendment

Plaintiff, in his Amended Complaint, asserts that "Inspector Hale did not do an impartial investigation" of an excessive force allegation, and this constituted deliberate indifference and an Eighth Amendment violation.  Amended Complaint at 7.  To prevail in a § 1983 action, Plaintiff must demonstrate: "(1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)). "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S. Const. amend. VIII.  The Eighth Amendment is applicable to the states through the Fourteenth Amendment." Bingham, 654 F.3d at 1175 (citation omitted).

More specifically, the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992).  An action is considered "unnecessary and wanton" if it is totally without penological justification. Rhodes v. Chapman, 452 U.S. 337, 346 (1981).

Defendant Hale counters Plaintiff's claim with the assertion that Plaintiff has failed to state an Eighth Amendment claim because there is no allegation that Hale's conduct caused Plaintiff a substantial risk of serious harm.  Hale's Motion at 7.  Upon

review of the Amended Complaint, Plaintiff has not presented any operative facts showing that any action by Defendant Hale subjected Plaintiff to the unnecessary and wanton infliction of pain or caused him a substantial risk of serious pain.  Indeed, Plaintiff does not attribute any other deprivations to the actions of Hale, including the deprivation of food, laundry services, and a better heating system.  See Hale's Motion at 7-8.  Vague and conclusory allegations will not support an action pursuant to 42 U.S.C. § 1983.  Hendrix v. Tucker, 535 F. App'x 803, 804-805 (11th Cir. 2013) (per curiam) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)).  Thus, Hale's Motion is due to be granted based on Plaintiff's failure to state an Eighth Amendment claim against Defendant Hale.

## V.  Supervisory Liability

Plaintiff claims that Hale knew her "subordinates were using excessive force on inmates after many complaints from inmates and their family members."  Amended Complaint at 8.  Liberally construing the Amended Complaint, as this Court must, Plaintiff alleges that Hale was aware of the danger to Plaintiff's health and safety because unnamed inmates and their family members had complained about officers using excessive force.

First, it is clear that Defendant Hale may not be held liable under a theory of respondeat superior.

> "Supervisory officials are not liable
> under section 1983 on the basis of respondeat

11

> superior or vicarious liability." <u>Belcher v.</u>
> <u>City of Foley, Ala.</u>, 30 F.3d 1390, 1396
> (11th Cir. 1994) (internal quotation marks
> and citation omitted). "The standard by which
> a supervisor is held liable in her individual
> capacity for the actions of a subordinate is
> extremely rigorous." <u>Gonzalez</u>,[7] 325 F.3d at
> 1234 (internal quotation marks and citation
> omitted). "Supervisory liability occurs either
> when the supervisor personally participates in
> the alleged constitutional violation or when
> there is a causal connection between actions
> of the supervising official and the alleged
> constitutional deprivation." <u>Brown v.</u>
> <u>Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008) (abrogated on

other grounds); see <u>Braddy v. Fla. Dep't of Labor & Emp't Sec.</u>, 133

F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability

requires something more than stating a claim of liability under a

theory of respondeat superior).

In addressing a claim of failure to protect against a

supervisor, and more particularly in this instance, against an

Inspector, the Court should inquire as to whether the individual

had the ability to prevent or stop a constitutional violation and

failed to exercise her authority as a supervisor to prevent or stop

the constitutional violation. <u>Keating v. City of Miami</u>, 598 F.3d

753, 765 (11th Cir.), <u>cert</u>. <u>dismissed</u>, <u>Timoney v. Keating</u>, 562 U.S.

978 (2010) (finding a supervisor may be liable under a theory of

supervisory liability if he has the ability to prevent or

---

[7] <u>Gonzalez v. Reno</u>, 325 F.3d 1228 (11th Cir. 2003) (abrogated
on other grounds).

discontinue a known constitutional violation and then fails to exercise his authority to stop the constitutional violation). Of course, "[e]ven when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citation omitted), cert. denied, 133 S.Ct 2802 (2013).

In this civil rights action, Plaintiff is required to allege a causal connection between the actions of Defendant Hale and the alleged constitutional deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). A necessary causal connection can be established if: (1) the supervisor knew about and failed to correct a widespread history of abuse; or (2) the supervisor's custom or policy resulted in a constitutional violation; or (3a) the supervisor directed the subordinate to act unlawfully; or (3b) the supervisor knew that the subordinate would act unlawfully and failed to stop him from acting unlawfully. Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014); Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). But, "[t]he standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Id. at 1360-61 (internal quotation marks omitted and citation omitted).

Plaintiff does not allege Defendant Hale personally participated in the alleged use of excessive force, nor does

Plaintiff contend that Defendant Hale directed officers to use force against Plaintiff.  Moreover, Plaintiff has not explained the supervisory role that Hale played, if any.  Plaintiff does not allege a widespread custom of abuse in an attempt to impose liability upon Hale.  Furthermore, upon review of the Amended Complaint, Plaintiff simply alleges that Defendant Hale should have known that officers would act unlawfully because of complaints about officers using excessive force at FSP.  Plaintiff has not alleged facts tending to show that Hale knew that the offending officers would act unlawfully and failed to prevent their actions.

Conclusory, vague, and general allegations of failure to protect should be dismissed.  See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (recognizing that a civil rights complaint containing vague and conclusory allegations will be dismissed as insufficient).  There is no indication that Hale foresaw the alleged attack of August 5, 2012, or failed to stop Officer Oliveros from acting unlawfully.  General complaints about officers, without more, did not put Hale on notice that Officer Oliveros would sexually batter Plaintiff.  With respect to Defendant Hale, Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Therefore, Defendant Hale's Motion is due to be granted with respect to the claim of deliberate indifference/failure to protect.

14

## VI.  Retaliation

Plaintiff claims his First Amendment right was infringed when Defendants Hale and Whitehead hindered him from reporting the abuse by intimidating him.  Amended Complaint at 8-9.  At most, Plaintiff describes this intimidation as being statements made by Hale that she does not like inmates, inmates need to be treated cruelly, and she hates inmates.  Id. at 8.  Plaintiff asserts that he was terrified of Hale.  Id.  With regard to Whitehead, Plaintiff states that he intimidated him and assigned Oliveros to I-Wing.  Id. at 9.  Plaintiff claims that Musselman called him names and said he would have officers beat Plaintiff for reporting the sexual battery and retaliation.[8]  Id.

Construing the Amended Complaint liberally, Plaintiff may be attempting to raise a retaliation claim.  With respect to a claim of a First Amendment violation in a prison setting, the rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance or a lawsuit concerning the conditions of his imprisonment.  Moulds v. Bullard, 345 F. App'x 387, 393 (11th Cir. 2009) (per curiam) (citation omitted); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008); see also Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005) (adopting the standard that "[a]

---

[8]  The Court will address the retaliation claim against Defendant Oliveros in the section of the opinion addressing the other claims against him.

plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights"), <u>cert</u>. <u>denied</u>, 549 U.S. 809 (2006).

"The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." <u>O'Bryant v. Finch</u>, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted), <u>cert</u>. <u>denied</u>, 133 S. Ct. 445 (2012). There are three elements to such a claim:

> [T]he inmate must establish that: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]."

<u>Id.</u> (first alteration added, remainder in original)(footnote omitted) (quoting <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008)).

To establish the third prong, a plaintiff is required to do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse

16

action was the prisoner's grievance or lawsuit." Jemison v. Wise, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted) (finding the district court erred by dismissing a complaint alleging retaliation with prejudice, "regardless of whether the retaliation claim ultimately [would] ha[ve] merit").

The Amended Complaint does not contain sufficient facts to state a claim of retaliation by Defendants Hale, Whitehead, and Musselman that is plausible on its face. Although Plaintiff states that he was intimidated by Hale and Whitehead, terrified of Hale, and verbally threatened and berated by Musselman, the Defendants' demeanor and threats did not hinder Plaintiff from complaining about the alleged assault on various levels. Not only did he file grievances, he complained to medical, he told Hale about the assault, and finally, Plaintiff filed a lawsuit against Hale, Whitehead, Musselman, and others. Thus, Plaintiff has not alleged that the Defendants conduct deterred Plaintiff from engaging in free speech or that he suffered some adverse action. Ultimately, Plaintiff was not deterred in the slightest from engaging in speech by their conduct. Therefore, Hale, Whitehead and Musselman's Motions are due to be granted with respect to a First Amendment retaliation claim.

To the extent Plaintiff is claiming harassment and verbal abuse, such allegations do not state a claim of federal constitutional dimension. See Hernandez v. Fla. Dep't of Corr.,

17

281 F. App'x. 862, 866 (11th Cir. 2008) (per curiam) (citing Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989)) ("Hernandez's allegations of verbal abuse and threats by the prison officers did not state a claim because the defendants never carried out these threats[,] and verbal abuse alone is insufficient to state a constitutional claim."), cert. denied, 555 U.S. 1184 (2009).

> "[M]ere threatening language and gestures of a custodial office do not, even if true, amount to constitutional violations." Coyle v. Hughes, 436 F.Supp. 591, 593 (W.D. Okl[a]. 1977). "Were a prisoner . . . entitled to a jury trial each time that he was threatened with violence by a prison guard, even though no injury resulted, the federal courts would be more burdened than ever with trials of prisoner suits . . . ." Bolden v. Mandel, 385 F.Supp. 761, 764 (D. Md. 1974). See Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) (the use of words, no matter how violent, does not comprise a section 1983 violation).

McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. denied, 464 U.S. 998 (1983).

Thus, to the extent Plaintiff is attempting to raise a claim of verbal abuse or harassment, Defendants Hale, Whitehead and Musselman's Motions are due to be granted.[9]

---

[9] Notably, Plaintiff does not allege that the Defendants followed through on their threats of harm.

## VII.   Fourteenth Amendment

Plaintiff makes a summary allegation that his "Fourteenth Amendment was infringed upon also." Amended Complaint at 8.  This is a rather vague and conclusory allegation.  Generally, Plaintiff claims that Hale did not conduct an impartial investigation.  He also complains about disposal of his grievances.  See Whitehead's Motion at 10; Espino and Musselman's Motion at 4-5.  Of import, an inmate does not have a constitutional right to an investigation. Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002); Stringer v. Doe, 503 F. App'x 888, 891 (11th Cir. 2013) (per curiam). Significantly, there is no substantive due process right to an internal investigation of a claim of sexual assault upon an inmate:

> The Eleventh Circuit has explained the difference between substantive and procedural due process rights. "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are implicit in the concept of ordered liberty.'" Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). Substantive due process rights are created by the Constitution, and "no amount of process can justify [their] infringement." Id. (internal quotation marks omitted) (citing McKinney, 20 F.3d at 1557). In order to have a substantive due process claim, [the plaintiff] must have a substantive right created by the Constitution. Id. [The plaintiff] has no substantive right of any kind to an investigation of his claim of sexual assault and excessive force by the Department of Corrections, much less one created by the Constitution. See id. (arrestee has no substantive right to an investigation of her excessive force complaint by the sheriff's

19

office, much less a right created by the
Constitution).

Edler v. Schwarz, No. 5:08CV275/SPM/EMT, 2010 WL 3211941, at *12
(N.D. Fla. May 13, 2010), report and recommendation adopted by No.
5:08CV275-SPM/EMT, 2010 WL 3211927 (N.D. Fla. Aug. 11, 2010).

To the extent that Plaintiff is claiming that he was deprived
of participation in the prison grievance procedures because he was
intimidated by Defendants Hale and Whitehead, or that his
grievances were ignored or wrongly decided by officials, Plaintiff
fails to state a claim of constitutional dimension.  Clearly, the
FDOC's grievance procedure does not provide him with a
constitutionally protected interest.  Mathews v. Moss, 506 F. App'x
981, 984 (11th Cir. 2013) (per curiam).  Moreover, failure to
thoroughly or impartially investigate a grievance does not present
an actionable claim under 42 U.S.C. § 1983.

> The Eleventh Circuit has held that a prisoner
> has no constitutional right to participate in
> prison grievance procedures. See Wildberger v.
> Bracknell, 869 F.2d 1467, 1467-68 (11th Cir.
> 1989). Therefore, a prison official's failure
> to process, respond to, or investigate such a
> grievance is not actionable under 42 U.S.C. §
> 1983. See Bingham v. Thomas, 654 F.3d 1171,
> 1178 (11th Cir. 2012) (explaining that the
> district court did not abuse "its discretion
> in dismissing [the prisoner's] claim that the
> prison's grievance procedures were
> inadequate").

Cainion v. Danforth, No. 7:12-CV-108 HL, 2012 WL 4567649, at *3
(M.D. Ga. Sept. 7, 2012), report and recommendation adopted by No.
7:12-CV-108 HL, 2012 WL 4568243 (M.D. Ga. Oct. 2, 2012).

In conclusion, as the United States Constitution does not create entitlement to grievance procedures or access to grievance procedures that have been established by the FDOC, Plaintiff's allegations regarding his institutional grievances and the adequacy of the corresponding investigations of those grievances fails to state a claim of federal constitutional dimension.[10]   Therefore, Hale, Whitehead, and Espino and Musselman's Motions are due to be granted with regard to the Fourteenth Amendment issue.

### VIII.   Freedom of Access to Clinic Entrances Act

Apparently, Plaintiff is attempting to raise a claim of violation of the Freedom of Access to Clinic Entrances Act (Act) pursuant to Title 18 U.S.C. § 248.   Amended Complaint at 7. Although not a model of clarity, Plaintiff alleges that he was sexually battered and that the doctor did not examine him and Hale failed to conduct an impartial investigation of the matter.   Even liberally construing his allegations, the Court concludes that Plaintiff fails to state a claim under the Act.

The Act concerns access to reproductive health services, defined as termination of a pregnancy and related counseling and

---

[10] Hale and Whitehead point out the internal inconsistency in Plaintiff's Amended Complaint.   While claiming that he and other inmates were hindered from utilizing the grievance box because the Defendants were throwing grievances away, Plaintiff states that he "is attaching all of the grievances from the institutional level and Central Office level[.]" Amended Complaint at 9.   Thus, his claim of the frequent destruction of grievances by unnamed staff is belied by his own exhibits.   See Hale's Motion at 12-13; Whitehead's Motion at 11.

referral services.   United States v. Hill, 893 F.Supp. 1034, 1036

(N.D. Fla. Sept. 15, 1994).   The Eleventh Circuit explained the

history of the Act:

> Congress passed the Access Act in response to increasing incidents of violence and obstruction at abortion clinics. The stated purpose of the Act is "**to protect and promote the public safety and health and activities affecting interstate commerce by establishing Federal criminal penalties and civil remedies for certain violent, threatening, obstructive and destructive conduct that is intended to injure, intimidate or interfere with persons seeking to obtain or provide reproductive health services**." Access Act, § 2. The Act imposes civil and criminal penalties against anyone who:
>
>> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services; ... or
>>
>> (3) intentionally damages or destroys the property of a facility, or attempts to do so, because such facility provides reproductive health services....
>
> Access Act, § 3(a) (codified at 18 U.S.C. § 248(a)).

Cheffer v. Reno, 55 F.3d 1517, 1519 (11th Cir. 1995) (footnotes

omitted) (emphasis added).

Upon review, Plaintiff fails to state a claim pursuant to the Act.  Thus, Hale, Whitehead, and Espino and Musselman's Motions are due to be granted with respect to this claim for relief.

## IX.   Physical Injury

Plaintiff fails to state that he suffered any physical injury based on Hale's conduct.  Instead, Plaintiff claims Hale conducted an improper investigation and caused Plaintiff trepidation. Therefore, Hale is not liable for compensatory or punitive damages pursuant to 42 U.S.C. § 1997e(e).  Hale's Motion at 13-16.  In addition, Plaintiff fails to attribute loss of weight, a rash due to poor laundry services and materials, and catching a cold due to improper heaters at FSP, to conduct undertaken by Hale.  Id. at 16. In this regard, Plaintiff failed to present any operative facts showing that Hale had any responsibility for these conditions of Plaintiff's confinement.  In sum, any injury due to nature of these conditions is not attributable to Hale and Hale's Motion is due to be granted.

## X.   Injunctive Relief

Plaintiff is no longer confined at FSP and is no longer subjected to the conditions of confinement at FSP; therefore, his claim for injunctive relief is moot.  As such, there is no live case or controversy between Plaintiff and the Defendants.  KH Outdoor, L.L.C. v. Clay Cnt'y, Fla., 482 F.3d 1299, 1302 (11th Cir. 2007).

23

## XI.   Qualified Immunity/Hale and Musselman

Defendants Hale and Musselman assert that they are entitled to qualified immunity from monetary damages in their individual capacities.  Hale's Motion at 20; Musselman's Motion at 8-9.  It is undisputed that these Defendants were engaged in discretionary functions during the events at issue.  To defeat qualified immunity with respect to Defendants Hale and Musselman, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.  Given the undersigned's conclusions regarding the claims raised against Defendants Hale and Musselman, qualified immunity should be granted as to these Defendants because they did not commit constitutional violations.

## XII.   Eleventh Amendment Immunity

Plaintiff clearly states that he is suing the Defendants in their individual capacities.  Amended Complaint at 1.  Therefore, Eleventh Amendment immunity is inapplicable to Plaintiff's allegations against the Defendants.

## XIII. Hale

The Court denies Hale's Motion with respect to his assertion that Plaintiff failed to exhaust his administrative remedies prior to filing suit regarding his claim of inadequate heating at FSP, but Hale's Motion is due to be granted for the reasons stated above, and Hale will be dismissed from this action.

24

### XIV.   John Doe

In the Amended Complaint, Plaintiff names a John Doe Defendant, described as a correctional officer sergeant. "[F]ictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam) (citing New v. Sports & Recreation, Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)).  To date, Plaintiff has not named this defendant.[11]  Plaintiff's description of this unnamed defendant in his Amended Complaint is not sufficiently specific to be able to identify the defendant among the many officers employed by the FDOC.  In addition, the FDOC's employee is not adequately described in the Amended Complaint so that an individual can be identified for service of process.  See Dean v. Barber, 951 F.2d 1210, 1216 n.6 (11th Cir. 1992).  Therefore, the Court will sua sponte dismiss Defendant Sgt. John Doe.

### XV.   Defendant Oliveros

In his statement of facts, Plaintiff presents the following:

> On 8-5-12 I was sexually battered by Officer Olivious[12] in the shower on B-Wing. Officer Olivious hit me on my ear and put his finger in my rectum.  Officer Olivious did this because we (inmates) kept asking him when are we going to take a shower.  When other inmates on D/C status had already taken a shower.  I was on SOS status and some other inmates as well on B-Wing were on the same

---

[11] Two years have passed since the filing of the Complaint.

[12] Plaintiff refers to Defendant Oliveros as "Olivious."

status.  When the nurse came around to do her
rounds we mentioned to her that Officer
Olivious would not give us a shower.  The
nurse left after doing her rounds on B-Wing
for the psyche cells (SOS).  She made Officer
Olivious give us a shower.  I went to the
shower first, and Officer Olivious placed me
in the shower while I was in handcuffs.
Officer Olivious said, "Nigger, why did you
snitch on me to the nurse?"  **That's when
Officer Olivious had hit me on my ear with his
fist and put his finger in my rectum.  I
couldn't do anything because I was in
handcuffs and naked.**  Sgt. John Doe, who was
there, had encouraged Officer Olivious to beat
me and sexually batter me while I was in
handcuffs.

Amended Complaint at 8 (enumeration omitted and emphasis added).

Plaintiff alleges that when he went to medical, Dr. Espino told him

he did not need to be examined although he knew Plaintiff had

injuries, and Dr. Espino refused to examine Plaintiff or treat him

for his injuries.  Id.  Plaintiff complains that he can not sleep

due to nightmares, he is having anxiety attacks, and he suffers

from pain in his rectum and ear.  Id. at 9.

The alleged abuse, as described in the Amended Complaint,

states an Eighth Amendment claim plausible on its face.  Plaintiff

contends that use of force was completely without penological

justification, while Plaintiff was naked and handcuffed.  He

asserts that he was injured and the doctor refused to examine or

treat him for his injuries, although the doctor recognized that he

was injured.  Upon review of the Amended Complaint, there is

sufficient facial plausibility as to an Eighth Amendment claim

against Defendant Oliveros. Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." Twombly, 530 U.S. at 570. Therefore, Defendant Oliveros' Motion is due to be denied with respect to the Eighth Amendment claim.

Plaintiff also contends that Oliveros threatened him for reporting the sexual battery and battery. Amended Complaint at 8. Plaintiff generally asserts that Oliveros intimidated him. Id. at 9.

The Amended Complaint does not contain sufficient facts to state a claim of retaliation by Defendant Oliveros that is plausible on its face. Although Plaintiff states that he was intimidated by Oliveros, his demeanor did not hinder Plaintiff from complaining about the alleged assault on various levels. Not only did Plaintiff file grievances,[13] he went to medical, he complained to the Inspector, and finally, Plaintiff filed a lawsuit against Oliveros.

Plaintiff has not identified any retaliatory actions taken by Defendant Oliveros, nor has he presented sufficient facts to demonstrate that any action was adverse. Plaintiff has not alleged

---

[13] As noted previously, there are internal inconsistencies in Plaintiff's Amended Complaint. While claiming that he and other inmates were hindered from utilizing the grievance process because the Defendants were throwing grievances away, he included "all of the grievances from the institutional level and Central Office level[.]" Amended Complaint at 9. The volume of grievances belies his assertion that he was hindered from using the grievance procedure.

that he was deterred from engaging in free speech or that he suffered some adverse action. His vague and conclusory allegation that Oliveros retaliated against him is insufficient to support a 42 U.S.C. § 1983 action. As such, Oliveros' Motion will be granted with respect to a First Amendment retaliation claim.

To the extent Plaintiff is attempting to raise a deliberate indifference to serious medical needs claim against Defendant Oliveros, this claim is due to be dismissed. Plaintiff's vague and conclusory statement that all of the Defendants were deliberately indifferent to his health and safety is hardly sufficient to present a claim to relief against Defendant Oliveros, or any other Defendant, that is plausible on its face. Therefore, Oliveros' Motion is due to be granted with respect to the claim of deliberate indifference to health and safety. Additionally, the claim of deliberate indifference to health and safety is due to be dismissed.

Finally, to the extent Plaintiff is claiming harassment and verbal abuse by Defendant Oliveros, these allegations do not rise to a constitutional violation. Hernandez v. Fla. Dep't of Corr., 281 F. App'x. at 866. Thus, Oliveros' Motion will be granted with respect to any claim of verbal abuse or harassment.

### XVI.  Eighth Amendment/Laundry, Food & Heat

Plaintiff complains about the conditions of his confinement while at FSP, including poor laundry service, inadequate portions

28

of food, and heaters not working properly.  He states that as a result of the deficiencies, he developed a rash from the dirty laundry; he lost weight from insufficient food; and he caught a cold "from the excessively low temperatures." Amended Complaint at 9.

In his Motion, Defendant Whitehead asserts that Plaintiff fails to state a claim for an Eighth Amendment violation regarding inadequate heating, food portions, or laundry materials.[14] Whitehead's Motion at 7-8; see Espino and Musselman's Motion at 4-5.  Whitehead submits that Plaintiff has not met either the objective or the subjective components of the two-part analysis which governs an Eighth Amendment challenge to conditions of confinement.  Id.  In doing so, Whitehead relies on the guidance provided by the Eleventh Circuit in Chandler v. Crosby, 379 F.3d 1278, 1288-89 (11th Cir. 2004).

In Chandler, the Eleventh Circuit addressed a prison conditions complaint and said:

> The Eighth Amendment to the United States
> Constitution states: "Excessive bail shall not

---

[14] In the Amended Complaint, Plaintiff, in his statement of facts, states that Assistant Warden Whitehead told his subordinates to use excessive force and to beat inmates and treat them cruelly. Amended Complaint at 8.  He further alleges that Whitehead knew that his subordinates were using excessive force based on the many complaints from inmates and family members.  Id.  Plaintiff further claims that after the sexual battery and battery by Oliveros, Whitehead assigned Oliveros to I-Wing to keep Plaintiff quiet about the abuse.  Id. at 9.  Plaintiff states that Whitehead intimidated him for reporting the abuse.  Id.

be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The "cruel and unusual punishments" standard applies to the conditions of a prisoner's confinement. Rhodes v. Chapman, 452 U.S. 337, 345-46, 101 S.Ct. 2392, 2398-99, 69 L.Ed.2d 59 (1981). While "the primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment," the Supreme Court's "more recent cases [show that] [t]he [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (marks, citations, and brackets omitted). "No static test can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346, 101 S.Ct. at 2399 (marks and citation omitted).

Even so, "the Constitution does not mandate comfortable prisons." Id. at 349, 101 S.Ct. at 2400. If prison conditions are merely "restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." Id.

Chandler, 379 F.3d at 1288-89 (footnote omitted).

Plaintiff was an inmate confined at FSP, a high security institution. In order to establish an Eighth Amendment conditions of confinement claim, he must demonstrate that a prison official was deliberately indifferent to a substantial risk of serious harm to him. Bennett v. Chitwood, 519 F. App'x 569, 573 (11th Cir.

30

2013) (per curiam) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832–33 (1994)).  To make this showing, he must meet both the objective and subjective components to the deliberate-indifference test.   <u>Id</u>. (citing <u>Farmer</u>, 511 U.S. at 834).

> To satisfy the objective, "substantial risk of serious harm" component, a plaintiff "must show a deprivation that is, 'objectively, sufficiently serious,' which means that the defendants' actions resulted in the denial of the minimal civilized measure of life's necessities." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996).  "The challenged condition must be 'extreme'": the prisoner must show that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004).  In evaluating an Eighth Amendment claim, we consider both the "severity" and the "duration" of the prisoner's exposure to extreme temperatures. <u>Id</u>. at 1295.  Merely showing that prison conditions are uncomfortable is not enough. <u>Id</u>. at 1289.

> For the subjective component, the prison official must (1) have subjective knowledge of the risk of serious harm, and (2) nevertheless fail to respond reasonably to the risk. <u>Farmer</u>, 511 U.S. at 837, 114 S.Ct. at 1979. Subjective knowledge on the part of the prison official requires that the official was aware of the facts "from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official actually drew that inference. <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1330 (11th Cir. 2008). A prison official must have a sufficiently culpable state of mind to be deliberately indifferent. <u>Carter v. Galloway</u>, 352 F.3d

> 1346, 1349 (11th Cir. 2003). "[T]he evidence
> must demonstrate that with knowledge of the
> infirm conditions, the official knowingly or
> recklessly declined to take actions that would
> have improved the conditions." Thomas v.
> Bryant, 614 F.3d 1288, 1312 (11th Cir. 2010)
> (alteration and quotation omitted). Mistakes
> and even negligence on the part of prison
> officials are not enough for a constitutional
> violation. Crosby, 379 F.3d at 1289.

Id. at 574.

Although Plaintiff has presented facts showing the conditions of his confinement were uncomfortable, the conditions he describes are certainly not extreme. The heaters may not have worked properly or provided the amount of heat that Plaintiff desired, but there was heat, and Plaintiff was confined in Raiford, Florida, where the average temperature during the coldest months of the year is not extreme, and Plaintiff was confined indoors, in a cell. Furthermore, he does not allege that he was exposed to the cold weather due to broken windows or open doors.[15]

To qualify as cruel and unusual under the Eighth Amendment, prison conditions must be extreme, like being housed with broken windows when the wind chill is forty to fifty degrees below zero or being exposed to below freezing temperatures for an extended period of time:

---

[15] Plaintiff does not allege or suggest that he suffered from frost bite or any other debilitating condition due to being housed in a cell at FSP.

> In Chandler v. Crosby, 379 F.3d 1278
> (11th Cir. 2004), the Eleventh Circuit
> examined a number of cases across the nation
> for guidance on when allegations of extreme
> cold qualified as "cruel and unusual
> punishment." Cases where conditions were
> found to be serious deprivations were:
> Mitchell v. Maynard, 80 F.3d 1433, 1443 (10th
> Cir. 1996) (lack of heat combined with the
> lack of clothing and bedding over extended
> period of time with other conditions such as
> no exercise, no hot water, no toilet paper);
> Del Raine v. Williford, 32 F.3d 1024, 1035-36
> (7th Cir. 1994) (broken windows offered no
> relief from the outdoor wind chills of forty
> to fifty degrees below zero); Henderson v.
> DeRobertis, 940 F.2d 1055, 1060 (7th Cir.
> 1991) (inmates exposed to temperatures below
> freezing for four days); Corselli v. Coughlin,
> 842 F.2d 23, 27 (2d Cir. 1988) (inmate exposed
> for 3 months to temperatures so cold there was
> ice in the toilet bowl); Lewis v. Lane, 816
> F.2d 1165, 1171 (7th Cir. 1987) (inmate
> exposed repeatedly to cell temperatures
> between 52 and 54 degrees).

Wineston v. Pack, No. 4:06cv438-RH/AK, 2009 WL 3126252, at *12

(N.D. Fla. Sept. 24, 2009) (Not Reported in F.Supp.2d).

However, conditions found not to constitute constitutional

violations are: Palmer v. Johnson, 193 F.3d 346, 349 (5th Cir.

1999) (inmates left outdoors overnight in temperatures of 59 degree

temperatures); and Hernandez v. Fla. Dep't of Corr., 281 F. App'x

862 (exposure to winter temperatures such as they are in Northern

Florida for two months not considered harmful to inmate's health).

The condition about which Plaintiff complains is not the sort of

extreme condition that violates contemporary standards of decency.

Furthermore, Plaintiff does not contend that he suffered any

33

injury from his exposure to chilly temperatures on I-Wing, other than stating he suffered from a cold.  The common cold is a viral infectious disease and does not constitute an injury from exposure to cold temperatures or support an Eighth Amendment claim.

With respect to the subjective component, Plaintiff does not attribute poor working heaters to any specific conduct of Defendant Whitehead.  The same is true of Plaintiff's complaints about laundry and food portions as he does not attribute these alleged deprivations to the conduct of Defendant Whitehead.  Poor laundry services do "not reflect that he was subject to the type of extreme conditions that posed an unreasonable risk of serious damage to health or safety."  Edler v. Gielow, No. 3:08cv530/WS/EMT, 2010 WL 3958014, at *7 (N.D. Fla. Oct. 7, 2010) (Not Reported in F.Supp.2d.).  Plaintiff mentions that he developed a rash, but again this does not constitute an injury in the constitutional sense.

Finally, Plaintiff generally complains about the food he received and weight loss, but Plaintiff has failed to provide any facts supporting a claim of unhealthy weight loss.  He has not provided the Court with his height and weight or body mass, and he does not claim that he suffered any medical problems due to extreme weight loss, like malnourishment.[16]

--------

[16]   See http://www.dc.state.fl.us/ActiveInmates/detail.   The Corrections Offender Network Inmate Population Information Detail shows that Plaintiff is five foot nine inches tall and weighs 189

Defendant Whitehead and Espino and Musselman's Motions are due to be granted with respect to this claim. Plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face" with respect to his complaints about inadequate heating, food portions, and laundry materials.[17]

The Court notes that there is an additional Eighth Amendment claim against Defendant Whitehead raised in the Amended Petition. Plaintiff claim that Whitehead told his subordinates to beat inmates, use excessive force, and to treat inmates cruelly. Amended Complaint at 8. Plaintiff also contends that Defendant Whitehead knew that his subordinates were using excessive force. Id. Defendant Whitehead does not address this Eighth Amendment Claim in his Motion and did not seek its dismissal.

## XVII.   Defendant Espino/Deliberate Indifference

Plaintiff raises an Eighth Amendment claim against Defendant Espino, alleging that the doctor was deliberately indifferent to Plaintiff's serious medical needs. Amended Complaint at 7. Plaintiff alleges that after he was sexually and physically battered on August 5, 2012, he went to medical and saw Dr. Espino.

---

pounds, certainly not underweight for a man of Plaintiff's stature.

[17] The Court will not address the question of Plaintiff's entitlement to compensatory or punitive damages with respect to this claim due to the finding that Plaintiff has failed to state a claim for relief that is plausible on its face. See Defendant Whitehead's Motion at 12-15; Espino and Musselman's Motion at 4-5.

Id. at 8.  Plaintiff claims that Espino laughed at him; told him to get out of his office; refused to examine him, even though he knew Plaintiff had injuries; and refused to address Plaintiff's injuries.  Id.

> To establish deliberate indifference, a plaintiff must show "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Conduct that is more than mere negligence includes: (1) knowledge of a serious medical need and a failure or refusal to provide care; (2) delaying treatment for non-medical reasons; (3) grossly inadequate care; (4) a decision to take an easier but less efficacious course of treatment; or (5) medical care that is so cursory as to amount to no treatment at all. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Baez v. Rogers, 522 F. App'x 819, 821 (11th Cir. 2013).

Defendant Espino argues that Plaintiff has failed to show that the doctor refused to provide treatment despite his knowledge that Plaintiff had a serious medical need.  More particularly, Espino contends that Plaintiff has failed to show subjective awareness of a serious risk of harm to Plaintiff, relying on Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003).

The Court first recognizes that this cause is before the Court on a motion to dismiss, not a motion for summary judgment.  Thus, the case is in a completely different posture than that in Farrow, when the court was addressing the granting of summary judgment

motion with respect to a claim of deliberate indifference. However, Espino also relies on <u>Mitchell v. Thompson</u>, 564 F. App'x 452, 458 (11th Cir. 2014) (per curiam) (finding dismissal appropriate because the allegations did not show the medical professional "had subjective knowledge of a serious risk of harm").

The Court, as it must, will liberally construe the Amended Complaint. The pro se Plaintiff alleges that he had been physically and sexually battered by an officer, and that when he went to see Dr. Espino, the doctor recognized that Plaintiff had injuries, but the doctor refused to examine or treat Plaintiff. Instead, Plaintiff alleges, the doctor laughed at Plaintiff, told him to get out of his office, and refused to do anything to address Plaintiff's injuries. Here, sufficient allegations have been presented to withstand a motion to dismiss for failure to state a claim. The Court concludes that the Amended Complaint states a deliberate indifference claim against Defendant Espino that is plausible on its face.[18]

### XVIII.   Qualified Immunity/Dr. Espino

---

[18] Although Dr. Espino adopts Defendant Whitehead's argument that Plaintiff lacks entitlement to compensatory or punitive damages, that argument only addressed the lack of entitlement to compensatory or punitive damages with respect to the claim of inadequate heating, food portions, or laundry materials. <u>See</u> Whitehead's Motion at 12-15. Therefore, it is inapplicable to this claim of failure to treat injuries raised against Dr. Espino.

Although it is undisputed that Dr. Espino was engaged in discretionary functions on August 5, 2012, given the undersigned's conclusion stated above, qualified immunity should be denied as to Defendant Dr. Espino with respect to the claim of deliberate indifference in violation of the Eighth Amendment.

Therefore, it is now

**ORDERED:**

1.   Defendant Hale's Motion to Dismiss (Doc. 24) is **GRANTED. Defendant Hale** is hereby **DISMISSED** from this action.

2.   Defendant **Sgt. John Doe** is **DISMISSED** from this action. The **Clerk** shall **terminate** Defendant Sgt. John Doe on the docket.

3.   Defendant Musselman's Motion to Dismiss (Doc. 59) is **GRANTED. Defendant Musselman** is hereby **DISMISSED** from this action.

4.   Defendant Espino's Motion to Dismiss (Doc. 59) is **GRANTED IN PART AND DENIED IN PART** as stated in the opinion.  It is **DENIED** with respect to the Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Espino.

5.   Defendant Oliveros' Motion to Dismiss (Doc. 55) is **GRANTED IN PART AND DENIED IN PART** as stated in the opinion.  It is **DENIED** with respect to the Eighth Amendment excessive force claim against Oliveros.

6.   Defendant Whitehead's Motion to Dismiss (Doc. 56) is **GRANTED;** however, the Eighth Amendment claim that Whitehead told his subordinates to beat inmates, use excessive force, and treat

them cruelly, with knowledge that his subordinates were heading his directives, remains.

7.    The following claims are dismissed from this action: (1) the Eighth Amendment claim against Defendant Hale; (2) the supervisory liability claim against Hale; (3) the First Amendment retaliation claim; (4) any claim of verbal abuse and harassment; (5) the Fourteenth Amendment claim; (6) the Freedom of Access to Clinic Entrances Act claim; (7) the claim for injunctive relief; (8) the Eighth Amendment conditions of confinement claim with respect to heat, laundry, and food; and (9) the Eighth Amendment claim of deliberate indifference to health and safety.

8.    Defendants Oliveros, Espino, and Whitehead shall answer or otherwise respond to the Amended Complaint by **January 17, 2017.**

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 12/16
c:
Warren Oliver
Counsel of Record

39