UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WARREN OLIVER,

        Plaintiff,

vs.

                                Case No. 3:14-cv-1506-J-39JRK
OFFICER WHITEHEAD, et al.,

        Defendants.
_____

## ORDER

### I.  Status

Plaintiff is an inmate confined in the Florida penal system.
He is proceeding pro se on an Amended Complaint (Amended Complaint)
(Doc. 11) pursuant to 42 U.S.C. § 1983.[1]  He filed his original
Complaint (Doc. 1) on December 8, 2014, pursuant to the mailbox
rule.  This cause is before the Court on Defendant Espino and
Whitehead's Motion for Summary Judgment (Motion) (Doc. 102).[2]
Plaintiff responded.  Plaintiff's Response to Defendants' Motion
for Summary Judgment (Response) (Doc. 111).  See Order (Doc. 12);
Notice (Doc. 103).  The Court granted Defendants' motion for leave
to file a reply, and Defendants' filed a Reply to Plaintiff's
Opposition to Defendants' Motion for Summary Judgment (Reply) (Doc.

_____

        [1] In this opinion, the Court references the document and page
numbers designated by the electronic filing system.

        [2] Defendant Oliveros does not join this Motion.

116).  Plaintiff's filed a response to the Reply, entitled
Objections to Defendants' Reply (Doc. 117).

## II.  Summary Judgment Standard

"Summary judgment is appropriate only if 'the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law.'"  <u>Moton v.
Cowart</u>, 631 F.3d 1337, 1341 (11th Cir. 2011) (quoting Fed. R. Civ.
P. 56(a)).  "If the moving party meets this burden, 'the nonmoving
party must present evidence beyond the pleadings showing that a
reasonable jury could find in its favor.'"  <u>Ekokotu v. Federal Exp.
Corp.</u>, 408 F. App'x 331, 333 (11th Cir.) (per curiam) (quoting
<u>Fickling v. United States</u>, 507 F.3d 1302, 1304 (11th Cir. 2007)),
<u>cert</u>. <u>denied</u>, 565 U.S. 944 (2011).

## III.  The Amended Complaint

The alleged facts supporting the Amended Complaint are set
forth at pages 8-9.  Plaintiff claims Defendant Espino was
deliberately indifferent to Plaintiff's serious medical needs, in
violation of Plaintiff's Eighth Amendment rights.  Amended
Complaint at 7.  Plaintiff states that after he was sexually and
physically battered on August 5, 2012, he went to medical and saw
Dr. Espino.  <u>Id</u>. at 8.  Plaintiff alleges that Espino laughed at
him; told him to get out of his office; refused to examine him,
even though he knew Plaintiff had injuries; and refused to address
Plaintiff's injuries.  <u>Id</u>.  Plaintiff raises an additional Eighth

Amendment claim against Defendant Whitehead.  Plaintiff alleges
that Whitehead told his subordinates to beat inmates, use excessive
force, and to treat inmates cruelly.  Id. at 8.  Plaintiff also
alleges that Defendant Whitehead knew that his subordinates were
using excessive force.  Id.

## IV.  Exhaustion of Administrative Remedies

Defendant Espino asserts that Plaintiff failed to properly
avail himself of the grievance process with regard to his claim
alleging deliberate indifference to a serious medical need.  The
Prison Litigation Reform Act (PLRA) requires exhaustion of
available administrative remedies before a 42 U.S.C. § 1983 action
with respect to prison conditions by a prisoner may be initiated in
this Court.  Title 42 U.S.C. § 1997e(a) provides: "No action shall
be brought with respect to prison conditions under section 1983 of
this title, or any other Federal law, by a prisoner confined in any
jail, prison or other correctional facility until such
administrative remedies as are available are exhausted."

Exhaustion of available administrative remedies is "a
precondition to an adjudication on the merits" and is mandatory
under the PLRA.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir.),
cert. denied, 129 S.Ct. 733 (2008); Jones v. Bock, 549 U.S. 199,
211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is
no longer left to the discretion of the district court, but is
mandatory.") (citation omitted).

3

Of import, "failure to exhaust is an affirmative defense under the PLRA[.]" Jones v. Bock, 549 U.S. at 216. However, "the PLRA exhaustion requirement is not jurisdictional[.]" Woodford v. Ngo, 548 U.S. at 101. See Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (recognizing that the defense "is not a jurisdictional matter"). Upon review of the Court's docket, Defendant Espino filed a Motion to Dismiss (Doc. 59) and an Answer[3] (Doc. 66) prior to the filing of the Motion for Summary Judgment (Doc. 102).

This Court has said, "[t]he defense of exhaustion is properly raise[d] in a motion to dismiss as a 'matter of judicial administration.'" Bentley v. White, No. 2:07-cv-573-FtM-29DNF, 2009 WL 248242, at * 3 (M.D. Fla. Jan. 30, 2009) (not reported in F.Supp.2d) (citation omitted). As a result, the Court may look beyond the pleadings by the parties to determine issues of fact with regard to the exhaustion defense. See Bryant v. Rich, 530 F.3d at 1374-75 ("Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'") (footnote and citations omitted).

---

[3] The affirmative defense of failure to exhaust administrative remedies is raised in the Answer. See Answer (Doc. 66) at 6.

The Eleventh Circuit addressed the matter of entertainment of an unenumerated motion to dismiss under 12(b), Fed.R.Civ.P., based on failure to exhaust administrative remedies:

> That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic. "'Federal courts . . . traditionally have entertained certain **pre-answer motions** that are not expressly provided for by the rules.'" <u>Ritza</u>, 837 F.2d at 369 (quoting 5C Wright & Miller, *supra*, § 1360 at 77). For instance, courts may decide motions to dismiss that are "'closely related to the management of the lawsuit and might generally be characterized as involving matters of judicial administration.'" <u>Id.</u>; <u>see</u> <u>e.g.</u>, <u>Int'l Ass'n of Entrepreneurs of Am. v. Angoff</u>, 58 F.3d 1266, 1271 (8th Cir. 1995) ("**While pre-answer motions** are ostensibly enumerated in Fed.R.Civ.P. 12(b), district courts have the discretion to recognize additional **pre-answer motions**, including motions to stay cases within federal jurisdiction when a parallel state action is pending.").

<u>Bryant v. Rich</u>, 530 F.3d at 1375 (emphasis added). The Eleventh Circuit concludes that "exhaustion should be decided on a Rule 12(b) motion to dismiss[.]" <u>Id</u>. (citation omitted).

More recently, the Eleventh Circuit explained: "under Federal Rule of Civil Procedure 12(g)(2), a defendant must raise the exhaustion defense in his first Rule 12 motion, otherwise the defense is forfeited and cannot be raised in a later motion under Rule 12." <u>Brooks v. Warden</u>, No. 16-16853, 2017 WL 3669417, at *2 (11th Cir. Aug. 25, 2017) (footnote omitted). Thus, Defendant Espino cannot raise this defense in a second Rule 12 motion that he

failed to raise in his first.  Although he entitled his current Motion a motion for summary judgment, it is due to be treated as a motion to dismiss with regard to his assertion that Plaintiff failed to exhaust administrative remedies.  Defendant Espino could have raised the exhaustion requirement as a defense in his previous motion, but he did not.  Pursuant to Rule 12(g)(2), he is prohibited from raising exhaustion at this juncture since he failed to raise it in his first motion.  <u>Brooks</u>, 2017 WL 3669417, at *4 (recognizing that the PLRA exhaustion requirement is a non-jurisdictional claim-processing rule, and is subject to forfeiture under Rule 12(g)(2)).

In conclusion, the exhaustion requirement should have been raised in Defendant Espino's Motion to Dismiss. This untimely assertion of the exhaustion defense is barred under Rule 12(g)(2); therefore, Defendant Espino's Motion, to the extent it is based on the affirmative defense of failure to exhaust administrative remedies, is due to be **DENIED**.

## V.  Dr. Espino

Plaintiff contends that Defendant Espino was deliberately indifferent to his serious medical needs.  The requirements to establish an Eighth Amendment claim with respect to medical care are:

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs."

> *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct.
> 285, 50 L.Ed.2d 251 (1976). To state a claim
> of unconstitutionally inadequate medical
> treatment, a prisoner must establish "an
> objectively serious [medical] need, an
> objectively insufficient response to that
> need, subjective awareness of facts signaling
> the need, and an actual inference of required
> action from those facts." *Taylor v. Adams*,
> 221 F.3d 1254, 1258 (11th Cir. 2000).

*Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1094 (11th Cir. 2014).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann v. Taser Inter., Inc.*, 588 F.3d 1291, 1307 (2009) (quoting *Hill v. Dekalf Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated* on *other* grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002)).

To satisfy the subjective component, a plaintiff must prove the following:

> "(1) subjective knowledge of a risk of serious
> harm; (2) disregard of that risk; (3) by
> conduct that is more than [gross] negligence."
> *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th
> Cir. 2005) (alteration in original) (internal
> quotation marks omitted). Although we have
> occasionally stated, in dicta, that a claim of
> deliberate indifference requires proof of
> "more than mere negligence," *McElligott v.*
> *Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999),
> our earlier holding in *Cottrell*, 85 F.3d at

7

1490[4], made clear that, after <u>Farmer v.
Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128
L.Ed.2d 811 (1994), a claim of deliberate
indifference requires proof of more than gross
negligence.

<u>Townsend v. Jefferson Cty.</u>, 601 F.3d 1152, 1158 (11th Cir. 2010).

A plaintiff must demonstrate that a defendant's responses to his medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. <u>Taylor v. Adams</u>, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-106 (1976)), <u>cert</u>. <u>denied</u>, 531 U.S. 1077 (2001). As such, Plaintiff must have had an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from the facts presented. <u>Taylor v. Adams</u>, 221 F.3d at 1258.

Upon review, the Court is not convinced that Plaintiff has established an objectively serious medical need with regard to his claimed injuries to his ear and rectum. Although Plaintiff apparently believes that the medical records will show his serious medical needs, that is not the case. Dr. Albert Carl Maier, in his Declaration (Doc. 102-4 at 2), states that "[n]o serious medical need nor condition was manifest at any time during the inmate's evaluation on August 6, 2012." Furthermore, he opines that "Dr.

---

4 <u>Cottrell v. Caldwell</u>, 85 F.3d 1480 (11th Cir. 1996).

Espino's review of Nurse Stokes' evaluation was similarly appropriate for such a patient and their conjoined level of care comported with that required for the clinical complaints presented." <u>Id</u>.

After his allegation of staff abuse, Plaintiff was taken to the institutional Emergency Room on August 6, 2012, and examined by Nurse Stokes. (Doc. 111-1 at 37). The records shows that Nurse Stokes took Plaintiff's vitals and found Plaintiff to be ambulatory, alert, oriented to his surroundings, and verbally responsive to questions. <u>Id</u>. Nurse Stokes recorded that Plaintiff told her that he had been hit in the left ear twice, grabbed around the throat, and had a finger inserted in his rectum. <u>Id</u>. Upon examination, Nurse Stokes found no external marks or bruising. <u>Id</u>. When she assessed Plaintiff's rectum, she found no swelling, bleeding, or discharge. <u>Id</u>.

The Diagram of Injury reflects no injury identified. <u>Id</u>. at 38. With respect to the left ear examination, Nurse Stokes found the eardrum in tact and no wounds. <u>Id</u>.

Nurse Stokes determined that no treatment need be provided and the physician need not be notified. <u>Id</u>. at 37. Plaintiff was returned to confinement. <u>Id</u>. In her discharge notes, Nurse Stokes referred Plaintiff to be seen by the doctor the following morning. <u>Id</u>. Dr. Espino reviewed the Emergency Room record, as evidenced by his initials and stamp. <u>Id</u>.

Plaintiff, in his Deposition, states that he does not recall being assessed by the nurse. (Doc. 102-3 at 48-49). Plaintiff's memory may be dim, but the record is clear. Pursuant to the Incident Report, dated August 6, 2012, Plaintiff was released from Self Harm Observation Status (SHOS) and re-housed on M Wing. (Doc. 111-1 at 74). He was escorted to the medical clinic and received a post-alleged-staff-abuse physical, conducted by SLPN Dena Stokes. Id. See also Bureau of State Investigations Case Summary Case Number 12-2-8962 (referring to Nurse Stokes' physical examination of Plaintiff) (Doc. 111-1 at 77).

Dr. Espino, in his Declaration (Doc. 102-5 at 1) states that he saw Plaintiff on August 7, 2012 and reviewed Plaintiff's medical chart, including Nurse Stokes' notes regarding the physical examination she conducted on August 6, 2012. With regard to Dr. Espino's decision not to re-examine Plaintiff the day after Nurse Stokes' examination, Dr. Espino explained: "[b]ecause Nurse Stokes noted no bruising, swelling, bleeding, discharge, or any other injury to Plaintiff's ear or rectum, I determined it was not necessary for me to conduct additional examination of a patient with no injury." Id. at 2.

The medical records do not support Plaintiff's claim that he presented a serious medical need to Dr. Espino that was not addressed. Even assuming Plaintiff had a serious medical need, the nurse, the immediate medical provider in the clinic, saw Plaintiff

and examined him. She found no external marks or bruising. Upon examination of Plaintiff's rectum, she found no swelling, bleeding, or discharge. Upon examination of the left ear, she found the eardrum in tact and no wounds. She concluded that based on her examination, Plaintiff did not need treatment and he was discharged to confinement.

Plaintiff has not demonstrated an objectively insufficient response to his medical needs. Although Defendant Espino may not have been compassionate and empathetic towards Plaintiff, Dr. Espino reviewed Plaintiff's medical chart, including the nurse's extensive notes, and found that an additional medical examination was not called for under the circumstances presented.

Plaintiff must show subjective awareness of facts signaling the need and an actual inference of required action from the facts presented. Although Plaintiff told the medical staff he had been struck on the ear and had a finger placed in his rectum, the medical staff did not find Plaintiff's condition to require additional medical attention, other than what he received.

The record shows that Plaintiff received medical attention;[5] therefore, the only way the he can effectively create a genuine

---

[5] Plaintiff received prompt medical attention from a nurse in the clinic once he claimed he had been assaulted. The nurse examined Plaintiff and found no identifiable injuries. Dr. Espino saw Plaintiff the following day, reviewed Plaintiff's chart, including Nurse Stokes' record of examination, and decided that Plaintiff's complaints or observable condition did not require further medical attention through examination.

issue of fact defeating an adverse motion for summary judgment is to produce some opinion evidence from a health care provider. Plaintiff's expression of lay opinion will not suffice to create a triable issue, especially given the standard is one of gross incompetence amounting to deliberate indifference as distinguished from medical negligence.  Upon review, Plaintiff failed to produce some opinion evidence from a health care provider.

Moreover, based on the record evidence, a medical professional (a nurse) determined that Plaintiff was not suffering from a treatable injury.  The doctor reviewed her assessment, and determined that an additional examination was unnecessary. Plaintiff has not demonstrated the seriousness of his medical need on August 7, 2012.  Indeed, he has failed to show, through the medical records and evidence he submitted, that he suffered any injury attributable to Defendant Espino's alleged deliberate indifference in denying him an additional examination two days after the alleged assault.  The record demonstrates that the medical staff responded appropriately to Plaintiff's claim that he had been assaulted by staff, and any contention otherwise is contradicted by the record.

Under the circumstances at issue, even if Plaintiff's treatment were to be considered less than adequate or medical malpractice, "[a]ccidents, mistakes, negligence, and medical malpractice are not 'constitutional violation[s] merely because the

victim is a prisoner.'" <u>Harris v. Coweta Cty.</u>, 21 F.3d 388, 393
(11th Cir. 1994) (citing <u>Estelle v. Gamble</u>, 429 U.S. at 106).
Defendant Espino, through his Declaration, the Declaration of Dr.
Maier, and documentary evidence, has met the burden of showing that
there is no genuine issue of fact concerning whether he was
deliberately indifferent to Plaintiff's serious medical needs.
Therefore, his Motion is due to be **granted.**

### VI. Defendant Whitehead

In the Amended Complaint, Plaintiff alleges that Defendant
Whitehead told his subordinates to beat inmates, use excessive
force, and to treat inmates cruelly. <u>Id</u>. at 8. Plaintiff also
alleges that Defendant Whitehead knew that his subordinates were
using excessive force. <u>Id</u>. Defendant Whitehead contends that this
claim is wholly unsupported, other than through Plaintiff's
conclusory allegations. Motion at 21.

Plaintiff, in his Deposition, testified that Defendant
Whitehead told an unnamed officer to beat Plaintiff up. (Doc. 102-
3 at 80-81). This took place before the allegations against
Defendant Oliveros. <u>Id</u>. at 81. Plaintiff added that the unnamed
officer was not Oliveros. <u>Id</u>. at 84. When asked whether the
unnamed officer did anything to Plaintiff, Plaintiff said the
unnamed officer "kept coming around and calling me names and
stuff." <u>Id</u>. at 85.

Plaintiff states that Defendant Whitehead was not physically present on the date of the assault by Oliveros. Id. at 84. Plaintiff has no knowledge that Defendant Whitehead spoke to Defendant Oliveros about Plaintiff prior to the assault. Id. Plaintiff did not witness Defendant Whitehead talking to Oliveros about Plaintiff. Id. Plaintiff admitted that he had not witnessed any conversations between Defendant Whitehead and any other officers discussing Plaintiff. Id. at 85.

Plaintiff references two witnesses that he claims heard Defendant Whitehead talk to an officer about Plaintiff, and Plaintiff identifies these witnesses as Alan Cordell and Ron Meadows. Id. at 81-82. Inmates Cordell and Meadows signed affidavits on July 17 2015 and June 4, 2015, respectively. (Doc. 102-7 at 1-3); (Doc. 11-1 at 11-12). Neither of these inmates attest that they heard Defendant Whitehead talk to an officer about Plaintiff. Id. Both inmates in their affidavits state that they heard Defendant Whitehead tell his officers to use excessive force on inmates, but the time period that these statements were allegedly made by Defendant Whitehead is not provided in the affidavits, and neither is the identity of the officers. More importantly, neither of these witnesses attests that he heard Defendant Whitehead tell Defendant Oliveros to use excessive force on Plaintiff.

In this civil rights action, Plaintiff must demonstrate a causal connection between the actions of Defendant Whitehead and the alleged constitutional deprivation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999). Defendant Whitehead contends that Plaintiff is attempting to hold him responsible based on a theory of *respondeat superior*. Motion at 22. Defendant Whitehead also asserts that Plaintiff has failed to establish a causal connection between Defendant Whitehead's actions and the alleged deprivation. Id. at 23. In this instance, Plaintiff must demonstrate a causal connection between Defendant Whitehead's actions and the assault by Defendant Oliveros, which took place on August 5, 2012.

The Eleventh Circuit provides guidance for employing the rigorous standard for establishing supervisory liability in a civil rights action:

> "Supervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam). Personal participation occurs when, for example, the supervisor inflicts the injury himself. See Hewett v. Jarrard, 786 F.2d 1080, 1087 (11th Cir. 1986). A causal connection can be established "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Mercado v. City of Orlando, 407 F.3d

15

1152, 1158 (11th Cir. 2005) (quotation
omitted). This standard is quite rigorous. <u>Id</u>.

<u>Smith v. LePage</u>, 834 F.3d 1285, 1298 (11th Cir. 2016).

In this case, there is no suggestion that Defendant Whitehead personally participated in the alleged violation. To the extent Plaintiff is raising a claim of failure to protect, the Court should inquire as to whether the individual had the ability to prevent or stop a constitutional violation and failed to exercise his authority as a supervisor to prevent or stop the constitutional violation. <u>Keating v. City of Miami</u>, 598 F.3d 753, 765 (11th Cir.) (finding a supervisor may be liable under a theory of supervisory liability if he has the ability to prevent or discontinue a known constitutional violation and then fails to exercise his authority to stop the constitutional violation). Of course, "[e]ven when an officer is not a participant in the excessive force, he can still be liable if he fails to take reasonable steps to protect the victim." <u>Ledlow v. Givens</u>, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citation omitted), <u>cert</u>. <u>denied</u>, 133 S.Ct 2802 (2013).

However, being made aware of a grievance does not extend supervisory liability.[6] <u>See</u> <u>King v. Henry</u>, No. 5:09cv365/MCR/EMT,

---

[6] Plaintiff's September 21, 2012 grievance complaining about Oliveros being on I wing on September 19, 2012 and September 20, 2012, concerned events that happened after August 5, 2012. (Doc. 111-1 at 92). Also, Plaintiff's grievance of November 7, 2012 concerns incidents involving Oliveros that allegedly took place on November 5, 2012 and November 6, 2012, also after August 5, 2012,

16

2010 WL 1576739, at *2 (N.D. Fla. Apr. 20, 2010) (not reported in F.Supp.2d) ("[F]iling a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied."). As noted previously, Plaintiff does not contend that Defendant Whitehead was present on the date of the incident. Furthermore, Plaintiff has no evidence that Defendant Whitehead directed Oliveros to beat or assault Plaintiff. At most, Plaintiff has stated that he heard Oliveros tell an unnamed officer to use force against him, an event (a beating by the unnamed officer) that never took place.

Other than the vague and conclusory allegations made by Plaintiff and inmates Allen and Ron Meadows, that is that Defendant Whitehead is known to direct his officers to use excessive force, Plaintiff has failed to present any evidence that Defendant Whitehead instructed Defendant Oliveros to use excessive force against Plaintiff.

Based on the strict limitation on supervisory liability, the Court concludes that Defendant Whitehead may not be held liable under a theory of respondeat superior. See Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998) (finding

---

the date of the alleged assault. Id. at 94. Inmate Allen states that he was on I wing with Plaintiff, apparently at the time Plaintiff was placed on I wing after the August 5, 2012 incident.

supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior).  Furthermore, nothing in Plaintiff's Amended Complaint or his deposition suggests that Whitehead directed the use of force by Defendant Oliveros, participated in the use of force, or witnessed it or knew it would happen and failed to act.  As such, Defendant Whitehead's Motion is due to be **granted**.

## VII.  Qualified Immunity

Recently, the Eleventh Circuit addressed qualified immunity, an immunity not only from liability but also from suit.  <u>Jones v. Fransen</u>, 857 F.3d 843, 849 (11th Cir. 2017).  The Eleventh Circuit explained:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).
>
> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). But the doctrine's protections do not extend to one

who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks and alteration omitted).

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120-21 (citation omitted).

<u>Jones v. Fransen</u>, 857 F.3d at 850–51.

Defendants Whitehead and Espino contend they are entitled to qualified immunity because they did not commit any statutory or constitutional violation. Motion at 25. Under the doctrine of qualified immunity, Defendants may claim they are entitled to qualified immunity from monetary damages in their individual capacities. It is undisputed that Defendants were engaged in discretionary functions during the events at issue. To defeat qualified immunity with respect to these Defendants, Plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established.

These Defendants did not violate Plaintiff's constitutional rights and are therefore entitled to qualified immunity. Given the undersigned's conclusion that the Defendants' Motion should be granted as to the Eighth Amendment claims against Defendants Whitehead and Espino, and based on the state of the law on qualified immunity in the Eleventh Circuit, qualified immunity should be granted as to Defendants Whitehead and Espino.

Accordingly, it is now

**ORDERED:**

For the reasons stated in the opinion, Defendant Espino and Whitehead's Motion for Summary Judgment (Doc. 102) is **GRANTED** with respect to the Eighth Amendment claims against them and with respect to their claim of entitlement to qualified immunity.

Judgment to that effect will be withheld pending adjudication of the action as a whole.  <u>See</u> Rule 54, Fed. R. Civ. P.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of November, 2017.

BRIAN J. DAVIS
United States District Judge

sa 11/3
c:
Warren Oliver
Counsel of Record